FILED
U.S. DISTRICT COURT
DISTRICT OF NEW MEXICO

**UNITED STATES DISTRICT COURT** FEB -4  PM 3: 24
**FOR THE DISTRICT OF NEW MEXICO**
CLERK-LAS CRUCES

| | | |
|---|---|---|
| Scott Bodley | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | No. 15-CV-98  LAM |
| | | |
| Barbara B. Crabb-Judge, | | |
| Stephen Crocker, | § | |
| Munish Sharda | § | |
| Daniel Graber | § | |
| Eric Holder | | |
| Does 1-10,000 | § | |
| | | |
| Defendants | § | |
| | | |
| All sued in their individual capacities | § | |
| | § | Verified Complaint |

**THIS IS A VERIFIED COMPLAINT PURSUANT TO THE RACKETEERING AND**

**CORRUPT PRACTICES ACT**

### Table of Contents

VERIFIED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

A.  The Nature of the Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B.  The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C.  Jurisdiction and Venue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

D.  The RICO Person . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

E.  The RICO Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

F.  The Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

G.  Statement Regarding the Statute of Limitations . . . . . . . . . . . . . . . . . . . . .

H.  The Alleged Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

I.  The Basis of Alleged Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

J.  The Alleged Wrongdoers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

K.  The Alleged Victims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

L.  The RICO Pattern . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

M.  Request for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Verifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### VERIFIED COMPLAINT

Plaintiff sues Defendants and alleges based upon personal knowledge as to Plaintiffs'
own conduct, and upon the basis of information and belief as to all other matters. Plaintiff's
information and belief is based, among other things, on documents generated by or on behalf of
the Defendants which reveal the Defendants' knowing participation in the fraudulent scheme
detailed in this Claim.

1

## A. The Nature of the Action

1. This is an action for triple damages, costs and attorney fees under 18 U.S.C. § 1964(c) of the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, arising out of an ongoing pattern of fraud being conducted by the Defendants in violation of 18 U.S.C. § 1962(c).

## B. The Parties

2. Plaintiff is Scott Bodley, an individual, who can be served at 1414 Little Walnut #10C, Silver City N.M. 88061.

3. Defendant Daniel J. Graber, is a United States attorney, acting as an imposter according to law, can be served individually and can be served at P.O. Box 1585, Madison, WI 58701.

4. Defendant Munish Sharda, is a United States attorney, acting as an imposter according to law and can be served at 222 Washington Ave., #700, Madison, WI 53703.

5. Defendant Eric Holder, is the Attorney General of the United States, acting as an imposter according to law and can be served at 950 Pennsylvania Ave. NW, Washington, DC 20530.

6. Defendants Does 1-10,000 are individuals who will be identified during discovery and are participants in the RICO scheme.

## C. Jurisdiction and Venue

7. This Court has original jurisdiction to hear Plaintiffs' civil RICO claim under 18 U.S.C. § 1964(c) in accordance with the decision of the United States Supreme Court in *Tafflin v. Levitt*, 493 U.S. 455 (1990).

8. This Court has venue jurisdiction because the RICO claims originated in this district.

## D. The RICO Persons

2

9.  Defendants are the RICO parties as identified by federal statutes.

10. Defendants have individually assumed the legal rights and duties of the RICO enterprise.

11. Defendants fraudulently misrepresented federal statutes, in particular Public Law 80-772 and

    18 USC section 3231 (1948) in order to engage in a criminal RICO enterprise against

    Plaintiff. Defendants then sent various wires and mailings, and engaged in kidnapping, false

    imprisonment, and violations of state and federal law.

### E.  Statement Regarding the Fraud

**Congress allegedly passed Public Law 80-772 by vote of the House of Representatives on
May 12, 1947, when in fact no Quorum was present in the House of Representatives and
the "voice vote" that occurred without identification of members voting was 38 to 6.  This is
in violation of the Quorum Clause of the Constitution as well as the Supreme Court's only
ruling on the Quorum issue, United States v. Balin, Joseph & Co.  No passage of the only
authority occurred in the 80th Congress, and therefore, no law exists to charge, convict or
imprison.**

### F.  The RICO Enterprise

12. The RICO Enterprise consists of every United States attorney and every federal judge

    involved in the prosecution and conviction of any person since Public Law 80-772 was

    enacted in 1948.  The parties directly involved in this action are the U.S. Attorneys as named,

    the Magistrate Judge, xxxx, and the federal judge.

13. Does consist of all participants to be listed during discovery.

14. Since 1948, the United States Department of Justice has illegally imprisoned and convicted

    U.S. citizens and non-U.S. citizens.

15. A study was performed by the Department of Justice in 2008 and 2009, in which the Department of Justice determined that no authority exists under Public Law 80-772.

16. Rather than notifying defendants and defense attorneys, as is required by candor to the court, state bar rules, registration with the right to practice before the court, and the Code of Ethics for U.S. attorneys, the Attorney General made a conscious decision to cover-up the fraud.

17. In 2010 Harry Edwin Miles sent a series of requests according to the Administrative Procedures Act to the Attorney General of the United States, asking him to answer a certified question of law regarding the validity of Public Law 80-772. Once again, the Attorney General, with full knowledge of the study, refused to answer and covered-up the information.

### G. The Statute of Limitations

18. "Injury discovery" is the default method of statute of limitations accrual in many federal actions, including RICO. See *Pacific Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246 (11th Cir. 2001) (citing *Rotella v. Wood*, 528 U.S. 549 (2000):

> The Statute of Limitations. We assume, without needing to decide, that the statute of limitations period starts from the date of discovery of the injury. Under the injury discovery rule, unless tolled, the statute of limitations under RICO is four years from the date the plaintiff knew it was injured. *Rotella*, 528 U.S. 549, 552-53, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000).

19. Under the injury discovery rule, an action accrues on the earlier of the date on which the actionable injury in fact is discovered or should have been discovered by exercise of reasonable diligence. The accrual date triggers the period of limitations, which is four years from the date the plaintiff knew he or she was injured. In other words, the statute of limitations is suspended or "tolled" until the plaintiff knows that he or she has an actionable injury in fact, and then has four years to file suit.

20. Plaintiffs' actionable injury in fact accrued when Plaintiff first learned of the fraud through Plaintiffs' exercise of reasonable diligence. This suit is timely filed within the four-year

statute of limitations starting from the date that Plaintiff knew in fact that he was injured.

### H. Statement Regarding the Statute of Limitations

21. Under Article III of the United States Constitution, a plaintiff must have sustained some injury in fact in order to have a justiciable "case or controversy," i.e., *in order to have standing and jurisdiction to bring a suit in federal court.* The Supreme Court has stated, in defining what is sometimes referred to as a "Lujan injury," that "[o]ver the years, our cases have established that the irreducible constitutional minimum of standing contains three elements." A plaintiff must show that (1) he has suffered or is in imminent danger of suffering an actual, concrete injury, (2) proximately caused by the [mis]conduct of the defendant, and (3) that the court has jurisdiction over parties and issues necessary to redress the injury. U.S. CONST. art. III, § 2; *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992); see also *Massachusetts v. Mellon,* 262 U.S. 447, 488 (1923).

22. In order to file a federal RICO action, injuries must be non-speculative (actual) and calculable (concrete). See *McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215A (2d Cir. 2008) (holding that plaintiff asserting a civil RICO claim for injury to business or property must allege actual, quantifiable injury); *Mendoza v. Zirkle Fruit Co.,* 301 F.3d 1163 (9th Cir. 2002) (stating that legally documented agricultural laborers have standing to bring RICO action since laborers alleged concrete, actual injury in form of lost wages, and award of money damages would redress such injury); *Pik-Coal Co. v. Big Rivers Elec. Corp.,* 200 F.3d 884 (6th Cir. 2000) (stating that plaintiff must plead and prove an actual injury to its business or property by reason of defendant's RICO transgression); *Imagineering, Inc. v. Kiewit Pacific Co.,* 976 F.2d 1303 (9th Cir. 1992) (stating that not all RICO injuries are

compensable thereunder; showing of "injury" requires proof of concrete financial loss), cert.

denied, 507 U.S. 1004 (1993).

23. An actionable "injury" denotes far more than a mere harm or loss. Black's Law Dictionary

defines an "injury" as:

> The violation of another's legal right, for which the law provides a remedy; a wrong or
> injustice . . . [A]uthorities distinguish harm from injury, holding that while harm denotes
> any personal loss or detriment, injury involves an actionable invasion of a legally
> protected interest. BLACK'S LAW DICTIONARY 801 (8th ed. 2004).

24. Since a concrete, non-speculative injury is required for standing to file a RICO claim, such

an injury must also be required to trigger the running of the statute of limitations. This was

exactly the point that the Second Circuit correctly attributed to the Supreme Court. "'Until

such injury occurs, there is no right to sue for damages under § 1964(c), and until there is a

right to sue under § 1964(c), a civil RICO action cannot be held to have accrued.'" *Bankers*

*Trust Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988) (quoting *Sedima, S.P.R.L. v. Imrex*

*Co.*, 473 U.S. 479, 496 (1985) (emphasis added).

25. The Eleventh Circuit has designated two distinct Time Points for determining injury

discovery accrual: "Inquiry Notice" and a "Period of Reasonable Diligence".

**Time Point #1:**

> "Inquiry notice is 'the term used for knowledge of facts that would lead a reasonable
> person to begin investigating the possibility that his legal rights had been infringed.'"

**Time Point #2:**

> "Once inquiry notice occurs, a prospective plaintiff enters a period of reasonable
> diligence, which is the time necessary, exercising ordinary investigation, to ascertain
> sufficient facts to file a complaint.

26. See ("*Tello I*"), *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1283 (11th Cir. 2005)

("In turn, inquiry notice triggers reasonable diligence in investigating the fraud for which

notice has been received in order to obtain sufficient information to file suit.") and ("*Tello*

6

*II*"), *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 968 (11th Cir. 2007) ("Inquiry notice

in our circuit occurs when there is factual evidence of the possibility of securities fraud that

would cause a reasonable person to investigate whether his or her legal rights had been

infringed.").

27. In discussing Time Point #2, above, the Eleventh Circuit referenced the beginning of a

"Period of Reasonable Diligence." This "Period of Reasonable Diligence" begins upon

"Inquiry Notice," i.e., when a "reasonable person" should have been aware of "storm

warnings." The "Period of Reasonable Diligence" ends upon "Injury Discovery Accrual," i.e.,

when a "reasonable person" should have discovered "sufficient facts to file a complaint."

28. In *Tello I*, the Eleventh Circuit remanded the case to the district court to hold hearings to

specifically identify the "what" and the "when" of these two essential time points. (*Tello I*,

410 F.3d at 1294.)

> [W]e remand this case to the district court to determine the essential, preliminary factual
> issues that we need to proceed with a legal determination of the applicable statute of
> limitations:
> (1) What established inquiry notice to the plaintiff class, and when did that occur? [and]
> (2) When did the plaintiff class have sufficient information to file suit?

29. The Eleventh Circuit coined a new term: "inquiry-notice" analysis. By hyphenating the term

of "inquiry notice," the Eleventh Circuit reflected the same two-part analysis shown in the

foregoing "Injury Discovery Accrual Formula." The hyphenation separates the (1) duty of

inquiry from (2) notice or discovery of information needed to file suit.

> We concluded our inquiry-notice analysis by explaining that "the task for the district
> judge on remand will be to determine the point in time when the plaintiff class had
> sufficient information of the alleged fraudulent securities conduct by Dean Witter to file
> this class action." We stated the two questions that we wanted answered on limited
> remand: "(1) What established inquiry notice [storm warnings] to the plaintiff class, and
> when did that occur?" and "(2) When did the plaintiff class have sufficient information to
> file suit [injury discovery] ?" (*Tello II*, 494 F.3d at 968 (quoting *Tello I*, 410 F.3d at
> 1294)).

7

30. The Sixth Circuit stated, consistently with the Eleventh Circuit's more recent holdings in

*Tello I and II*,

> [Defendant] suggests that the limitations period is triggered when the plaintiff learns facts
> that would cause a reasonable [plaintiff] to investigate the possibility of fraud. Some
> cases support that suggestion. See, e.g., *Theoharous*, 256 F.3d at 1228. The majority
> view, however, is that knowledge of suspicious facts-"storm warnings," they are
> frequently called-merely triggers a duty to investigate, and that the limitation period
> begins to run only when a reasonably diligent investigation would have discovered the
> fraud. See *New England Health Care Employees Pension Fund v. Ernst & Young*, 336
> F.3d 495, 501 (6th Cir. 2003) (emphasis added).

31. Since "inquiry notice," (Time Point #1 in the formula above) has historically referenced that

point in time when a "duty of inquiry" arises based on the objective "reasonable person" test,

it should retain only that moniker. The second essential point in time (Time Point #2 in the

formula above) is in fact the time, based on the objective "reasonable person" test, an

actionable injury in fact should have been discovered under "injury discovery" principles.

This latter point in time, when the claim accrues and the statute of limitations begins to run,

is the principal focal point. However, to determine the time the claim accrues based on an

objective reasonable person test, it is equally essential to pinpoint that time when the

"reasonable person" first had a duty to initiate diligent inquiries, i.e., "inquiry notice." See

*Law v. Medco Research, Inc.,* 113 F.3d 781, 785 (7th Cir. 1997); *Tello v. Dean Witter*

*Reynolds, Inc.*, 410 F.3d 1275, 1283 (11th Cir. 2005).

32. *Tello I* and *Tello II* also specified facts which must be determined in the trial court,

preferably by a jury. First, the trier of fact must identify the proximate point in time that a

reasonable person should have discovered "storm warnings" or should have become

suspicious and must identify "what" would have caused a reasonable person to make such a

discovery. Second, the trier of fact must identify the proximate time a reasonable person

should have discovered his injury in fact and identified "what" would have caused a

reasonable person to make such a discovery.

33. By combining the terminology and holdings of the Seventh and Eleventh circuits, one can arrive at a clear and manageable formula to determine when a cause of action accrues. "Storm warnings" trigger the "Period of Reasonable Diligence." This "Period of Reasonable Diligence" ends when a reasonable person should have discovered (or the plaintiff actually discovers at an earlier date) his injuries, regardless of whether inquiries were actually made. The statute of limitations begins to run only when the "Period of Reasonable Diligence" has culminated upon actual or constructive injury discovery.

34. This formula helps a plaintiff determine what must be discovered and when it must be discovered. The de facto tolling principles and application of the reasonable person standard also ensure that valid claims will not be time-barred due to circumstances beyond a plaintiff's control.

35. Equitable and estoppel tolling principles are uniformly applicable in federal cases to prevent running of the statute when essential facts are concealed from plaintiff, whether or not the concealment is fraudulent. As stated by the U.S. Supreme Court in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 111 S. Ct. 2773, 501 U.S. 350, 363-64 (1991) (quoting *Bailey v. Glover, 21 Wall.* 342, 348 (1874);

> "time requirements in law suits . . . are customarily subject to 'equitable tolling.'" *Irwin v. Veterans Administration*, U.S., (1990) (slip op. 5), citing *Hallstrom v. Tillamook County*, 493 U.S. 20, (1989) (slip op. 6). Thus, this Court has said that in the usual case, "where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." [i.e. even with no fraudulent concealment] *Bailey v. Glover*, 21 Wall. 342, 348 (1874); see also *Holmberg v. Armbrecht*, 327 U.S. 392, 396-397 (1946).

36. Thus, the statute of limitations does not run while the plaintiff is unaware of the fact of the fraud upon his rights, i.e., unaware of his "injury by the fraud." Equitable tolling of the

statute continues even after "inquiry notice," i.e., even after a "reasonable person's"
suspicion would have been aroused. The statute is tolled until a reasonable person or person
of ordinary intelligence would be able to discover essential facts necessary to file suit. After
the essential facts necessary to file suit are discovered or should have been discovered,
equitable tolling ceases and plaintiff has the full statutory period in which to file suit. See
*TRW, Inc. v. Andrews*, 534 U.S. 19, 30 (2001) (discussing the "reasonable person" and the
triggering of the limitations period in the context of an alleged violation of the Fair Credit
Reporting Act).

37. Thus, the point in time when equitable tolling ceases - i.e., when the facts needed to file suit
are discovered or discoverable - is the same point in time when a statute runs under "injury
discovery" accrual principles.

## I. The Alleged Misconduct

38. Defendants committed the offences of mail fraud, wire fraud, kidnapping,

39. Defendants' conduct ar a felony crimes To state a cause of action for fraud in the
inducement, a plaintiff must allege the following:

  1. A misrepresentation of a material fact;
  2. That the representor knew or should have known of the statement's falsity;
  3. That the representor intended that the representation would induce another to rely on
  it; and
  4. That the plaintiff suffered injury in justifiable reliance on the representation.

40. Defendants fraudulently induced Plaintiff as follows: (1) Defendant misrepresented federal
criminal statutes; (2) Defendant knew or should have known that these representations were
false; (3) Defendant intended that these representations would induce Plaintiff to rely on
them; and (4) Plaintiff suffered injury in justifiable reliance on the representation.

41. Defendant swore out false criminal complaints and obtained a false indictment.

42. Defendants violated the duties he has sworn to uphold.

### J. The Basis of Alleged Liability

43. Defendants's false representations are the actual and proximate cause of damages to Plaintiff.

44. Defendant's has suffered damage to his reputation in the verified amount of $50 million.

45. The actual damages in the amount of $50 million are tripled under civil RICO.

### K. The RICO Pattern

46. On September 21, 2010, William K. Black testified before the Financial Crisis Commission about the role of fraud in the financial crisis. In his overview of his key findings, Black effectively outlined the pattern of racketeering activity conducted by the Liar's Loan Enterprise during the years 2001 through 2008, wherein the top executives within the national subprime lending industry operated their organizations as control frauds by making intentionally bad loans at premium yield to produce extreme growth, coupled with extreme leverage and grossly inadequate loss reserves, to produce enormous executive compensation—at the expense of the company and society. See EXHIBIT 4: *Testimony before the Financial Crisis Commission, Miami, Florida*, (September 21, 2010) (statement of William K. Black, Associate Professor of Economics and Law), pages 2-4, as follows:

### L. Count 1 – RICO Violation

47. Plaintiff re-allege each and every allegation as set forth above, and hereby incorporates same by reference as if all were set forth fully herein.

48. Defendants are a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

49. Non-party malfeasants, their officers, agents, and employees are persons within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

50. The Defendants conducted and/or participated in the conduct of the Enterprise's affairs,

directly or indirectly, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

51. The Defendants and the non-party malfeasants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs through a *pattern of racketeering activity*, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

52. During the ten (10) calendar years preceding this lawsuit, Defendants together with the non-party malfeasants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts of mortgage fraud, and did so in violation of the RICO law at 18 U.S.C. 1962(c).

53. Defendants participated in the operation or management through direct action, acquisition, merger, subsidiaries, nominees, and/or a combination thereof.

54. Defendant is liable to Plaintiffs in the amount $50 million plus $150 million in damages

## S.  Request for Relief

**WHEREFORE**, Plaintiff demands judgment against the Defendants for actual, consequential, and potential damages, together with sanctions for raising unsupported claims or defenses, and such other relief the Court deems just and proper. Further, Plaintiffs demand trial by jury on all issues so triable by law.

_____
Scott Bodley

_____
Erin Bodley
2/04/15

12

1. I, Scott Bodley (Principal's name)
   1414 Little Walnut Road Apt 10C, Silver City, NM 88061 (Principal's address),
   being of sound mind and legal capacity, do hereby appoint
   Erin Bodley (Agent's name)
   1414 Little Walnut Road Apt 10C, Silver City, NM 88061 (Agent's address),
   as my true and lawful attorney in fact, to act for me in my name, place, and stead, and on my
   behalf to do and perform the following:

   *Any and all documents as necessary until my death*

2. The following property, interests, or rights shall be subject to this Power of Attorney:

   *(Identify assets subject to agent's authority.)*

3. This Power of Attorney shall be effective on the date of January 10, 2015.

4. This Power of Attorney shall remain in effect in the event that I should become or be declared
   disabled, incapacitated, or incompetent.

5. This Power of Attorney shall terminate on the date of my death , unless I have revoked it sooner.
   I may revoke this Power of Attorney at any time and in any manner.

6. My agent shall be paid compensation for services pursuant to this Power of Attorney as follows:

   *Notne*

7. This Power of Attorney shall be governed by the laws of the State of New Mexico.


In Witness Whereof, I have signed this Power of Attorney of my own free will.

/s/ Scott Bodley
Principal's Signature



January 10, 2015
Date




Agreed to and Accepted by:

Agent's Signature

Erin Bodley

1/10/15
Date